Cabell and Brockenbrough, J.
concurred in the opinion of the president.
After the delivery of the foregoing opinions, Baldwin requested to be heard, and was allowed to argue the case. Upon the argument (which was before a full court) the opinions were as follows—
Brockenbrough, J. It is a well established principle, that if a partnership be dissolved by the death of one of the partners, the executor or administrator of the deceased partner becomes tenant in common with the surviving partner, of the partnership effects in possession. Gow on Partn. 337. It is also a well established principle, that an individual creditor of a partner, having obtained a judgment separately against him for his own separate debt, may issue his fieri facias and cause it to be levied on the social effects, and the sheriff must seize the whole of them, though he may not sell the moiety, but an undivided moiety of the whole; and a vendee of the undivided moiety becomes tenant in common with the other partner. Gow 224. Shaver v. White & Dougherty, 6 Munf. 110. It would seem to follow, that if a judgment be rendered against the administrator of a deceased partner, for the said partner’s individual debt, a fieri facias against the goods of the intestate in the hands of the administrator may be levied on the tangible goods of the partnership, and an undivided moiety of the whole may be sold to pay the debt of the deceased; for the administrator is tenant in common with the surviving partner; and it might perhaps *441 be contended that if Jacob Dull, the surviving partner in this case, had retained the possession of the partnership effects, a fieri facias against George Dull's administrator might yet be levied on those effects. But it is not necessary to maintain that position in this case. For here, Peck the administrator of George Dull was not only tenant in common with Jacob Dull the surviving partner, but, by agreement with the latter, he obtained actual possession of the social effects, and was bound both by agreement and by law to pay off first the partnership debts, and then to divide the surplus between himself and his cotenant in common. By thus obtaining possession of the partnership goods, he became chargeable, as administrator, with the undivided moiety of them, as legal assets in his hands. “ Whatever comes to the executors’ hands, or they are intrusted with as executors, shall be assets at law." 2 Fonbl. Eq. 401. 3d. am. edi. 622. See also 2 Williams on Executors 1022. Bac. Abr. Executors. H. 2.
These assets were not less legal, because there was a lien on them to pay the partnership debts. Vincent v. Sharp, 2 Starkie’s Cas. 507. 3 Eng. Com. Law Rep. 451.
In cases of this sort, as the social effects are first liable to pay the social debts (according to the maxim, qui sentit commodum, sentire debet et onus) the separate creditor has no right to more of the partnership property than the separate interest of that partner, which is, in fact, a moiety of the surplus after paying the partnership debts. If, then, the fieri facias be issued against the partnership effects, a bill in equity may be filed by the solvent or surviving partner, to take an account of what is due to such partner, and for an injunction in the mean time. Gow 227. 1 Madd. Ch. 136. And I presume, that on the case being brought into equity, that court will distribute the surplus funds between the *442 solvent or surviving partner, and the creditor of the insolvent or deceased partner, according to their several rJghts. Although the surviving partner may go into equity, yet why should it be required, in this case, that the creditor-of the deceased partner should become plaintiff in equity P Jacob Dull had surrendered the possession to Peck, who agreed to sell the goods, pay off the partnership debts, and divide the surplus. Peck, therefore, had the game in his own hands. He did sell the goods. It was just as easy for him to prove at law, as in equity, how much of the proceeds he had paid towards the partnership debts, and of course how much surplus remained in his hands.
When Peck was sued as administrator in the first instance by Hall, he might, on the plea of fully administered, have given in evidence to the jury the payment of partnership debts to the full extent of the social effects in his hands, and if he had done so, his plea would have been supported : or if he had proved debts paid to a smaller extent, the jury might have ascertained the surplus in his hands, and found against him the moiety of that surplus. To that extent, he would have been found guilty of a misapplication of his intestate’s funds. It would seem, however, that in the first action Peck made no such defence; but still it was competent for him and his sureties to make the same defence in the present action on the administration bond, and the jury did in fact make the enquiry, and found a surplus of assets more than sufficient to pay the debt. In this I see no error, and no prejudice to the rights of the deceased partner.
I am therefore for reversing the judgment of the circuit court, and affirming that of the county court.
Brooke, Cabell and Parker, J. concurred in opinion to reverse the judgment of the circuit court, and affirm that of the county court.
*443 Tucker, P. adhering to his opinion already delivered in the cause, made the following additional remarks:
The action in this case being for a devastavit, it was incumbent on the plaintiff to prove that the assets in question actually came to the administrator’s hands, or have been lost by his negligence, or that, from the delay to reduce them into possession, he ought to be charged with them as if collected.
As to the first—They were not in his hands as administrator. They were placed there upon the faith of their being first applied to the payment of partnership debts. They were moreover in his hands liable to those debts in the first instance, since “ no person in possession of partnership funds can make any use of them inconsistent with the social purposes.” They were thus impounded in his hands. They were there in double trust, bound both by contract and by equity.
As to the second—It is not pretended that the assets have been lost.
As to the third—Though I am not aware that there is any case at law, impugning the general principle that choses in action are never assets until reduced into possession, (Bac. Abr. Executors. H. 2. 1 Salk. 207. 314. Shep. Touch. 497. Wentworth’s Office of Executor, ch. 6. p. 65.) or deciding that an executor shall be charged with a debt by unreasonable delay in collecting it, yet as equity will so charge him (2 Bro. C. C. 156. 1 Madd. Ch. Cas. 162.) I will concede, for the sake of the argument, that such would be the case in a court of law. But then the unreasonable delay must be proved. Now, although a long time has elapsed, yet the record of the suit between the administrator and the surviving partner not being before us, it is impossible to say that the delay has proceeded from the fault of the administrator. Every presumption is against it, as the surviving partner, and not the administrator, is *444 plaintiff. It would therefore be grossly unreasonable to compel him to pay away to the relator, funds which are this moment demanded by another. The true controversy, in fact, is between the creditor and the surviving partner: the administrator is but a stakeholder. To make the stakeholder pay while the court of equity is proceeding against him, would be unjust and unprecedented. If the creditor desires to hasten the proceedings, and contest the surviving partner’s claim, he may introvene. If he does not, he should await the result.
I remain of opinion to affirm the judgment.
Judgment of circuit court reversed, and. that of county court affirmed.-